SUMMONS ISSUED

FILED
CLERK

2011 MAR 30 AM 9: 44

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

**ORIGINAL**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MIGUEL NEGRON & IRENE NEGRON

        Plaintiff(s),

-against-

THE CITY OF NEW YORK,
POLICE OFFICER(S) "JANE DOE" AND
"JOHN DOE" 1-10.

1 'through' 10 inclusive,
the names of the last defendants
being fictitious, the true names
of the defendants being unknown
to the plaintiff(s).
        Defendant(s).

CASE No.: CV11-1544

**COMPLAINT**

PLAINTIFF(S) DEMAND
TRIAL BY JURY

TOWNES, J.

GO, M.J.

      Plaintiffs MIGUEL NEGRON & IRENE NEGRON, by their attorney, PAUL A. HALE, complaining of the defendants, respectfully alleges as follows:

### PRELIMINARY STATEMENT

    1.    Plaintiffs brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

### JURISDICTION

    2.    This action is brought pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988, and the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

    3.    Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 and 1367.

### VENUE

4. Venue is properly laid in the Eastern District of New York under U.S.C. § 1391 (b), in that this is the District in which the claim arose.

## JURY DEMAND

5. Plaintiffs respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. Plaintiff, MIGUEL NEGRON born in 1983, is a Hispanic male, a citizen of the United States, and at all relevant times a resident of the State of New York.

7. Plaintiff, IRENE NEGRON born in 1984, is a Hispanic female, a citizen of the United States, and at all relevant times a resident of the State of New York.

8. Defendant, THE CITY OF NEW YORK, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

9. Defendant, THE CITY OF NEW YORK, maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

10. That at all times hereinafter mentioned the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

11. Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment of or in cooperation with defendant THE CITY OF NEW YORK.

## FACTUAL ALLEGATIONS

12. On or about 8/27/2010 at approximately 1 AM plaintiffs were at their home at 135 Washington Walk #1E Brooklyn, NY 11206.

13. At the above time and place MIGUEL NEGRON's brother-n-law called 911 to report that MIGUEL NEGRON was suffering from heart palpitations. Mr. NEGRON suffers from heart murmurs.

14. Mr. NEGRON was placed on the floor and was close to passing out from these palpitations.

15. After 911 was called a large number of uniformed police officers showed up at the above premises.

16. These police officers followed EMS workers into the private residence without consent or a warrant.

17. Once the police officers were inside they began to harass all parties present.

18. Mr. NEGRON was attempting to stand up to walk to the ambulance when an OFFICER "ROSENTHAL" knocked him down to the ground with his elbow.

19. At this point IRENE NEGRON began to shout at the officers, telling them that her husband suffers from a "bad heart."

20. The officers' response to MS. NEGRON was to place her under arrest.

21. An OFFICER "MARSH" called Ms. NEGRON a "bitch, hood rat" during her arrest.

22. The officers then handcuffed Mr. NEGRON despite him consistently asking for medical help.

23. At some point, OFFICER "MARSH" told Ms. NEGRON's son, "I'm taking your fucking bitch mother to jail and your dad to the loony bin."

24. Mr. NEGRON was then placed in the back of a police car driven by an OFFICER "ROSENTHAL".

25. Ms. NEGRON was placed in a car driven by OFFICER "MARSH".

26. While Ms. NEGRON was in the car OFFICER "MARSH" looked up Ms. NEGRON's past and notice dthere was a domestic violence call in the past, when he discovered this he told her, "I see you had a DV case, your bitch ass probable deserved it."

27. Ms. NEGRON was then transported to PSA 3. While being taken out of the car OFFICER "MARSH" placed Ms. NEGRON in a choke hold and asked her, "Who do you think I am?" Ms. NEGRON's neck hurt for days from this hold.

28. Ms. NEGRON was forced to stay handcuffed for approximately 8 hours until an officer from another shift took the handcuffs off in the morning.

29. Ms. NEGRON was then transported to central booking and was released at approximately 10 pm the same day.

30. Ms. NEGRON was given an ACD after approximately 4 court appearances.

31. When Mr. NEGRON was placed in the squad car he kept telling the officer that his chest hurt and he needed help for his heart.

32. OFFICER "ROSENTHAL"'s response was to keep telling Mr. NEGRON that he "was going to kick his ass if he didn't shut up". This was repeated at least five times during the 15 minute car ride to Pct. PSA 3.

33. In the Pct. parking lot Mr. NEGRON was dragged out of the car by OFFICER "ROSENTHAL". OFFICER ROSENTHAL did this by grabbing Mr. NEGRON's neck and waist band.

34. When OFFICER "ROSENTHAL" threw Mr. NEGRON out of the car Mr. NEGRON landed on his handcuffed wrists - this broke MR. NEGRON's wrist.

35. Mr. NEGRON screamed to the officer, "You broke my hand!" at least three times.

36. OFFICER "ROSENTHAL" responded by lifting Mr. NEGRON up off the ground by his handcuffs.

37. Mr. NEGRON then had his hands pulled up higher than his shoulders as he was marched into

the station house.

38. Once inside the station house he was thrown into a plastic table which resulted in a laceration to his chest.

39. Mr. NEGRON was placed in a holding cell where he continued to complain about his wrist and chest pains.

40. Eventually Mr. NEGRON passed out.

41. Mr. NEGRON then remembers waking up at Woodhull hospital.

42. From Woodhull Mr. NEGRON was transported back to PSA 3.

43. From PSA 3 Mr. NEGRON was transported to central booking.

44. Mr. Negron was released at 11 AM the same day.

45. Mr. NEGRON eventually received an ACD after 4 court appearances.

46. At the above time and place plaintiffs were wrongfully arrested without a warrant, probable cause, or consent.

47. There was no reasonable suspicion of wrongdoing when plaintiffs were seized, detained, and arrested.

48. At all times during the events described above, the defendant officers were engaged in a joint venture and formed an agreement to violate plaintiffs' rights.

49. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events.

50. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiffs.

51. During the events described above, defendants acted maliciously and with the

intent to injure plaintiffs.

52. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiffs.

53. As a direct and proximate cause of the acts of the defendants, plaintiff suffered the following injuries and damages:

    A. An arrest not based upon probable cause;

    B. Unwarranted and malicious criminal prosecution;

    C. Deprivation of liberty without due process of law;

    D. Excessive force imposed upon them;

    E. Summary punishment imposed upon them;

    F. Denied equal protection under the law; and

    G. Denial of medical attention.

## FIRST CLAIM FOR RELIEF
## DEPRIVATION OF FEDERAL RIGHTS UNDER 42 U.S.C. S 1983

54. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the previous paragraphs with the same force and effect as if fully set forth herein.

55. All of the aforementioned acts of defendants, their agents, servants and employees, were carried out under the color of state law.

56. All of the aforementioned acts deprived plaintiffs of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

57. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all the actual and/or apparent authority

attendant thereto.

58. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

59. Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

60. The acts complained of deprived plaintiffs of their rights:

    A. Not to be deprived of liberty without due process of law;

    B. To be free from seizure and arrest not based upon probable cause;

    C. To be free from unwarranted and malicious criminal prosecution;

    D. Not to have excessive force imposed upon him;

    E. Not to have summary punishment imposed upon him; and

    F. To receive equal protection under the law.

**WHEREFORE**, plaintiffs each demand judgment in the sum of one million dollars ($1,000,000) in compensatory damages, two million dollars ($2,000,000) in punitive damages, plus reasonable attorney's fees, costs, and disbursements of this action.

Dated: 3/25/2011
       Brooklyn, NY

                                                         Attorney for Plaintiff(s)
                                                         PAUL HALE ESQ. [PH-8273]
                                                         26 Court Street, Suite 1901

Brooklyn, NY 11242
PHONE: (718) 554-7344